**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 9, 2009

Charles R. Fulbruge III
Clerk

No. 09-70016

DERRICK LEON JACKSON

Petitioner – Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent – Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-4083

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner, Derrick Leon Jackson, requests a certificate of appealability ("COA") to appeal the district court's denial of his Rule 60 motion for relief from judgment. His request is DENIED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

In 1998, a Texas jury convicted Jackson of the 1988 murder of Forrest Henderson and Richard Wrotenberry and sentenced him to death.[1] The Court of Criminal Appeals affirmed the conviction and sentence on direct appeal, and Jackson did not petition the Supreme Court for a writ of certiorari. *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App. 2000). Jackson then filed a state habeas corpus application, which the Court of Criminal Appeals denied after reviewing the case and adopting the trial court's findings and conclusions. *Ex parte Jackson*, No. 60,124-01 (Tex. Crim. App. Dec. 1, 2004) (unpublished).

After losing his collateral attack at the state level, Jackson, through his state habeas attorney, requested appointed counsel in federal court. His motion noted that he wanted new representation for his federal habeas petition. The district court granted the motion and appointed Steven Rosen ("Rosen") and James Crowley ("Crowley"). Rosen and Crowley prepared a timely federal habeas corpus petition. They each signed and verified the petition, which they submitted in November 2005. The district court denied it in February 2007.

This court denied a COA on Jackson's appeal of that decision, *Jackson v. Quarterman*, 265 F. App'x 352 (5th Cir. 2008) (unpublished), and the Supreme Court denied his application for a writ of certiorari, *Jackson v. Quarterman*, 129 S. Ct. 86 (Oct. 6, 2008). After the Supreme Court denied his application—more than twenty months after the district court entered a final judgment denying his federal habeas petition—Jackson filed, *pro se*, the Rule 60 motion that is the subject of this COA request. Fed. R. Civ. P. 60(b)(4), 60(d)(3). The motion, which contains the first and only indication in the record that Jackson was unhappy with his representation during the habeas proceedings, attacked the validity of the district court's denial of the federal habeas petition.

---

[1] The facts of the crime are recounted in *Jackson*, 265 F. App'x at 353-56.

In the motion, Jackson asserts that the district court's denial of his habeas petition was void for a lack of subject matter jurisdiction, and because his lawyers committed a fraud on the court by signing and filing the petition without his permission. Jackson claims that his appointed counsel should have raised additional issues in the petition and that they were not dedicated to serving his best interests.[2]

Jackson attached to the motion a letter Rosen sent him after Rosen and Crowley were appointed but before they filed the petition on Jackson's behalf. In it, Rosen refers to a letter he received from Jackson in which Jackson worried that he was being "railroaded" and apparently expressed dissatisfaction with Rosen's representation of him. Rosen's letter notes that he forwarded Jackson's letter to the district judge and states that Rosen would "cease to move further on your case until I receive instruction from his office." The record does not show that Jackson ever raised his complaints directly with the district court, and Rosen and Crowley continued to serve as Jackson's court-appointed counsel.[3] Jackson met with Crowley to discuss his case after the exchange of letters with Rosen in July. According to his accounts of the meeting, Jackson told Crowley about certain issues he wanted raised in his habeas petition and also told Crowley that he needed to acquaint himself with the record and meet with him again. Rosen and Crowley filed the habeas petition sometime after Crowley's meeting with Jackson.

Jackson did not complain about the filing of the petition or about his representation during the more than fourteen months that the district court was

---

[2] Jackson felt that certain information about the Houston crime lab that processed several DNA tests should have been included in the habeas petition. He has also asserted that he wanted an ineffective assistance claim raised. The habeas petition does contain an ineffective assistance argument. *Jackson*, 265 F. App'x at 358.

[3] In his brief, Jackson claims that he sent a copy of the July 8, 2005 letter from Rosen to the district court.

considering his habeas petition. He did not assert that Rosen and Crowley were not his counsel or that they filed the petition without his consent. The record does not reflect any complaint until Jackson submitted his Rule 60 motion, nearly three years after his habeas petition was filed with the district court. The district court denied Jackson's motion, and he filed a timely appeal.

## II. STANDARD OF REVIEW

Jackson filed his federal habeas petition and his Rule 60 motion after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This court has held that a petitioner must obtain a COA before appealing the denial of a Rule 60 motion seeking relief from judgment, except "when the purpose of the motion is to reinstate appellate jurisdiction over the original denial of habeas relief." *Ochoa Canales v. Quarterman*, 507 F.3d 884, 888 (5th Cir. 2007). Jackson is attempting to void the district court's judgment. Thus, he requires a COA before he can appeal. 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003).

In determining whether a COA should issue, this Court limits its examination to a "threshold inquiry into the underlying merit of [the petitioner's] claims." *Id*. at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id*. at 336. A COA will be granted if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotations omitted). The debatability of the underlying constitutional claim is at issue, not the resolution of that debate. *Id*. at 342. "Any doubt regarding whether to grant a COA is resolved in favor of the

petitioner, and the severity of the penalty may be considered in making this determination." *ShisInday v. Quarterman,* 511 F.3d 514, 520 (5th Cir. 2007) (citation omitted).

For claims that have been rejected on procedural grounds, however, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

It is unclear what, if any, constitutional violations Jackson was attempting to allege in his Rule 60 motion, and his briefing in this court focuses on matters of subject matter jurisdiction and fraud. Because the district court denied the motion on procedural grounds, however, this court can deny a COA if the procedural rulings were not debatable. *Id.*

## III. DISCUSSION

Jackson seeks a COA on the district court's rejection of his arguments that the 2007 judgment against him was void pursuant to Rule 60(b)(4) and should be set aside pursuant to Rule 60(d)(3) because his court-appointed attorneys perpetrated a fraud on the court.

### A. Void Judgment

Rule 60 allows a district court to provide relief from a judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4). A judgment may be set aside pursuant to Rule 60(b)(4) if the district court lacked subject matter or personal jurisdiction, or if it acted inconsistent with due process. *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003) (citations omitted); *see* 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2862 (2d ed. 1995). "[B]ecause federal courts regulate the scope of their own jurisdiction, a Rule 60(b)(4) challenge to jurisdiction should be sustained only where there is a clear usurpation of power or total want of jurisdiction." *Callon Petroleum Co.*,

351 F.3d at 208 (quotations and citations omitted); *see also Cent. Vt. Pub. Serv. Co. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (requiring "exceptional circumstances" to invoke Rule 60(b)).

There is no question that Jackson's habeas petition was filed in a district court authorized by statute to consider it.

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(d). Jackson was convicted of capital murder and sentenced in Harris County, Texas. Harris County is within the Southern District of Texas, the same district in which his habeas petition was filed.

Jackson argues, however, that he did not file, and did not approve the filing of, his habeas petition. He asserts that his complaints about his counsel should have prompted the judge to replace his counsel and should have indicated that his appointed counsel were not representing him when they filed the habeas petition.

Jackson waited until this court affirmed the district court's ruling and the Supreme Court denied his application for a writ of certiorari before filing his Rule 60 motion and directly informing the district court about his alleged problems with counsel. He did not tell the court that his lawyers had filed the petition without his consent while it was pending, and the record reveals no objections to his representation during the same period. Except for a letter produced nearly three years after the filing of his habeas petition indirectly indicating that Jackson thought he was being "railroaded," Jackson has not come

forward with anything but his own unsworn allegations about his communications with counsel.

Jackson's failure to contest the district court's jurisdiction over his habeas petition when he had the opportunity to do so bars him from collaterally attacking that jurisdiction after the fact. "Even if a court does not expressly rule on matters relating to its exercise of jurisdiction, if the parties *could* have challenged the court's power to hear a case, then *res judicata* principles serve to bar them from later challenging it collaterally." *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986) (citing *Chicot County Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940)) (emphasis in original). The rule makes sense in this context. Habeas petitioners cannot employ a wait-and-see strategy by attacking jurisdiction only after losing on the merits and through the appeals process when they know about the putative jurisdictional defect from the start. Even assuming that Jackson had a valid jurisdictional objection, he could have raised it while his habeas petition was pending. He failed to do so.

Moreover, Jackson's unsworn, after-the-fact allegations are wholly insufficient to show the district court's "clear usurpation of power or total want of jurisdiction." *Callon Petroleum Co.*, 351 F.3d at 208. Jackson can point to nothing in the record that shows he asked for different counsel, told the district court that he refused to be represented by Rosen and Crowley, or asked to represent himself. Indeed, Jackson acknowledges that he met with Crowley to discuss his case *after* his exchange of letters with Rosen. Jackson's complaints about his lawyers' filing of the petition and their failure to include certain arguments in it are complaints about their performance as his counsel; they do not undermine the court's jurisdiction to consider the petition. The court's alleged receipt, months prior, of a letter intimating that Jackson was dissatisfied with one of his two appointed counsel did not strip the district court of

jurisdiction over the petition.[4]  Even assuming that the judge did encounter a letter expressing Jackson's belief that he was being "railroaded," a decision to allow Rosen and Crowley to continue their representation would not have had *jurisdictional* consequences.[5]  Reasonable jurists could not disagree with the district court's finding that it had jurisdiction over Jackson's habeas petition. His application for a COA on the Rule 60(b)(4) motion is denied.

## B.  Fraud on the Court

Rule 60(b)(3) allows a court to grant relief from a final judgment because of "fraud[,] . . . misrepresentation, or misconduct by an opposing party," but a motion made pursuant to 60(b)(3) must be filed within one year of the judgment, at the latest.  Fed. R. Civ. P. 60(c)(1).  Rule 60(d)(3) functions as a saving clause: it allows courts to "set aside a judgment for fraud on the court" without a strict time bar.[6]  The standard for "fraud on the court" is, as a consequence, demanding.  "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an

---

[4] Jackson was not entitled to counsel of his choice, and, in any event, insubstantial complaints would not have entitled him to substitute counsel.  *United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007).

[5] The circumstances in this case differ significantly from those in *Deutscher v. Angelone*, a Ninth Circuit decision cited by Jackson.  16 F.3d 981 (9th Cir. 1994).  The *Deutscher* court allowed a petitioner to file a second habeas petition without penalty because he had not authorized the first petition, which was filed without his knowledge by the same counsel who had provided ineffective assistance at trial.  *Id.* at 984.  The petitioner in *Deutscher* had also disavowed the first habeas petition early in the process.  *Id.*  A subsequent Ninth Circuit decision characterized *Deutscher* as a case "where the attorney [acts] only on her or his own behalf, and does not actually represent the client."  *Manning v. Foster*, 224 F.3d 1129, 1135 (9th Cir. 2000).  Jackson, on the other hand, made no complaints about his habeas petition or his representation until after it had been fully litigated.  The district court appointed new counsel for the habeas appeal at Jackson's request, and Jackson has not shown that those counsel acted on their own behalf rather than on his.

[6] Rule 60(d)(3) contains the "fraud on the court" provision that was part of the penultimate sentence of Rule 60(b) before its 2007 revision.  The change was stylistic only, *see* Fed. R. Civ. P. 60, Advisory Committee Notes, 2007 Amendments, and thus interpretations of the prior "fraud upon the court" language apply equally to the new Rule 60(d)(3).

attorney is implicated, will constitute fraud on the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (citations omitted). Fraud under Rule 60(d)(3) "embrace[s] . . . the species of fraud which does or attempts to[] defile the court itself." *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989) (quotation omitted).

Regardless of the truth of Jackson's complaints about the state of his representation when Rosen and Crowley filed his habeas petition, there was no fraud on the court. Jackson has not shown that his attorneys hatched "an unconscionable plan or scheme . . . designed to improperly influence the court in its decision." *Rozier*, 573 F.2d at 1338 (quotation and citation omitted). "Fraud upon the court requires that there was a material subversion of the legal process such as could not have been exposed within the one-year window" provided by what is now Rule 60(c). *Apotex Corp. v. Merck & Co.*, 507 F.3d 1357, 1360 (Fed. Cir. 2007). There was no material subversion of the legal process in Jackson's case, and even if there had been, the circumstances in this case would not have prevented its exposure for so long that Jackson's only recourse was Rule 60(d)(3).[7] Reasonable jurists could not debate whether the district court properly denied Jackson's "fraud on the court" argument. Jackson's application for a COA on his Rule 60(d)(3) motion is denied.

## IV. CONCLUSION

Jackson's application for a COA is DENIED. His motions for a stay of execution and for the imposition of Rule 11 sanctions are also DENIED.[8]

---

[7] Jackson also argues that the district court improperly denied his Rule 60(d)(3) argument because it was time-barred. His motion, however, was denied on other grounds. This court will not address Jackson's arguments for tolling because they are irrelevant.

[8] Jackson protested the notice of appearance filed by the Attorney General of Texas, which included a statement that an execution date had been set. Currently, no execution date is set. The Attorney General's appearance in this case warrants neither a stay or execution nor Rule 11 sanctions.